UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Sarah Torres *o/b/o* J.E.D.L.T.,

        Plaintiff,

  v.

Commissioner of Social Security,

        Defendant.

**Report and Recommendation**

16-CV-745A

---

## I. INTRODUCTION

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 6.) Pending before the Court are motions, by plaintiff Sarah Torres ("Torres") and defendant the Commissioner of Social Security ("Commissioner"), for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"). (Dkt. Nos. 13, 14.) Torres seeks review of a denial of her application for Title XVI Supplemental Security Income ("SSI") benefits for her great niece ("JT"). Torres believes that the Commissioner failed to develop the administrative record adequately, in that the Commissioner did not obtain any of JT's educational records. Torres believes that the Commissioner could not make a finding of significant academic achievement without school records that would show grades, attendance, school counseling, and the development of an individualized education program ("IEP"). The Commissioner acknowledges the absence of school records, apart from one completed teacher questionnaire, and blames the Buffalo Board of Education for responding that no records could be found. Torres also raises concerns about how the Commissioner determined that JT had less than marked limitations in certain functional domains.

The Court has deemed the motions submitted on papers under FRCP 78(b).  For the reasons below, the Court respectfully recommends granting Torres's cross-motion in part to remand for further proceedings.

II.  **BACKGROUND**

   **A.   Factual Background**

The certified administrative record for this case contains numerous medical and other records, but Torres has emphasized the absence of educational records.  Given the issues in play and the Court's recommendation, a review is in order of what the administrative record does and does not contain.

The record does contain medical, psychological, or behavioral records for examinations that JT underwent outside of school.  The record contains a neuropsychological consultation report from 2008, when JT was about four years old.  (Certified administrative record, Dkt. No. 9, at 202, hereafter denoted as [202].)  A speech pathology report describes speech and language problems that JT had when she was about four years old.  [206.]  The record contains child and adolescent treatment evaluations from 2012 and 2013.  [208.]  A consultative psychological evaluation occurred in 2013.  [232.]  Most of the remaining factual exhibits in the record comprise general pediatric medical records dating between 2011 and 2014.  [215, 236, 251.]

The record does contain one teacher questionnaire, dated March 4, 2013, that postdates the application for benefits and bears a header from a state office for disability determinations.  [170.]  In that questionnaire, the teacher reported knowing JT for six months and seeing her all day every day.  [170.]  The teacher denied any unusual degree of absenteeism.  [170.]  The teacher circled ratings for "slight problem" for the activities of comprehending oral instructions and applying problem-solving skills in class discussions.  [171.]  The teacher circled a rating for "obvious

2

problem" with respect to providing organized oral explanations and adequate descriptions. [171.] The teacher added the comment, "She just needs to focus and pay attention. Her work needs more organization, but is similar to that of other students in the class." [171.] On another page, the teacher indicated daily obvious problems with multiple activities related to paying attention, focusing, carrying out multi-step instructions, and working without distracting herself or others. [172.] The teacher added this concluding comment:

> Extremely bright and capable child. She needs to work on focusing and maintaining her prescription. [JT] takes 10 mg of Ritalin daily at home.

[176.] No academic, attendance, or disciplinary records accompanied the questionnaire. The only other educational document in the administrative record is what appears to be a one-page request to the Buffalo Board of Education requesting medical information and a medical field contact. [196.]

### B. Procedural Background

Torres filed the application for SSI on December 7, 2012, claiming a date of disability onset of September 24, 2012. [17, 139–44.] The Commissioner denied Torres's claim on March 27, 2013. [86–94.] Torres then requested a hearing before an Administrative Law Judge ("ALJ"). [103–05.]

The hearing occurred on September 10, 2014. At the hearing, Torres testified generally about JT's family background. Torres testified about JT's 504 plan and how, with the extra help, JT had good enough grades to make the honor roll once and to be "really good." [54.] Torres testified that JT has friends in school and gets along with her teachers. [55.] Torres testified further about some behavioral and disciplinary issues that she has with JT at home. [58–65.] Torres also describes some of JT's psychological issues including mood changes. [72.] JT herself also testified briefly. [79–83.]

The ALJ issued an unfavorable decision on December 1, 2014. [14.] The ALJ decided that JT had two severe impairments: "attention deficit hyperactivity disorder and oppositional defiant disorder." [20.] The ALJ next concluded that none of JT's severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ considered Listings 112.11 and 112.08. [21.] Similarly, the ALJ decided that JT did not have an impairment or combination of impairments that functionally equaled the severity of any listing:

> The claimant's participation in various activities, improvement in behavioral and social problems, and academic achievements [] are inconsistent with the claimant and her guardian's allegations. Moreover, the claimant is described as an extremely bright and capable child by her teacher, who also noted that prescribed medication needs to be better maintained to accommodate some slight to obvious problems in the claimant's functioning.

[22.]

The Appeals Council upheld the ALJ's determination on July 20, 2016. [10.]

Torres commenced this case by filing her summons and complaint on September 15, 2016. (Dkt. No. 1.) Torres then filed her pending motion on April 5, 2017. (Dkt. No. 13.) In support of her motion, Torres focused heavily on the absence of educational records from the administrative record:

> Rather than adhere to this duty, the ALJ ignored the apparent gap and relied on inappropriate sources to assess J.E.T.'s functioning at school. For example, he asserted she was in regular education and cited to the consultative examination, UB Neurology Pediatric MS Clinic's 2008 neuropsychological evaluation, and Women's and Children's Hospital's speech and language pathology evaluation as support. (Tr. 20). However, none of these records contain J.E.T.'s actual school records. (Tr. 229–232, 198–204). He committed an identical error by asserting J.E.T. had "significant academic achievement in her regular coursework" despite a pending IEP, and then cited to the consultative examination as support. (Tr. 20). How exactly did he determine her academic achievement in regular coursework without actually having any of her education records? Why would she have attended summer school two summers in a row if she was doing so well in her classes? Furthermore, was her "significant academic achievement" only with the assistance of special education services? In the absence of the education records, the answers to these questions are

> unknown. As such, the ALJ should have developed the record with the missing records. *See Rodriguez o/b/o C.W.*, 2015 WL 5037014 at *4.
>
> The harm in the ALJ's error is significant. The record and the hearing testimony clearly indicated J.E.T. struggled academically, required special education services, and struggled with maintaining progress at school. Yet, the ALJ relied primarily on Mr. Majuk's teacher questionnaire to reject this evidence and accorded the questionnaire "significant weight" because it was allegedly consistent with the record and did not indicate "significant behavioral or learning problems." (Tr. 21). However, the ALJ had no idea if Mr. Majuk's questionnaire was consistent with the education record because he never reviewed them as they were not in the record.

(Dkt. No. 13-1 at 17–18.)

The Commissioner filed the corresponding cross-motion on June 9, 2017. (Dkt. No. 14.) The Commissioner defends the ALJ's determination by addressing the absence of academic or other educational records as follows:

> The ALJ relied on sufficient educational evidence that was presented throughout the record from the sources listed in the SSRs. Most significantly, the ALJ relied on a March 4, 2013 Teacher Questionnaire completed by JET's third grade teacher, Mr. Majuk. Tr. 21, 24–25, *referring to* Tr. 167–74. Moreover, the Buffalo Board of Education's January 15, 2013 response to the agency's request for records indicated that she had not been on an IEP. Tr. 193. This is telling, as this Court has held that an ALJ's duty do develop the record is satisfied where information is requested, but the requested records do not exist. *See Allen v. Comm'r of Soc. Sec.*, No. 1:16-CV-00273(MAT), 2017 WL 604421, at *3 (W.D.N.Y. Feb. 15, 2017).
>
> With regard to JET's academic performance after this period, the ALJ relied on other sources, including Plaintiff's testimony, JET's doctor's records, and CATS agency personnel, as described under the Social Security Rulings. SSR 09-2p. That ALJ thoroughly discussed this evidence, which supported his determination that JET did not have marked school difficulties, especially after JET was prescribed medication and given assistance to treat her ADHD. On March 6, 2013, after JET had been given medication for ADHD, she was noted to be doing better in school. Tr. 397. On March 14, 2013, Plaintiff stated that JET was better able to complete her schoolwork and homework, and she was better able to focus. Tr. 397. On March 28, 2013, Ms. Cummings noted that JET had been put on a 504 plan where JET received an aide in class and extra time on tests. Tr. 397-98. JET's grades and ability to focus continued to improve through May 9, 2013. Tr. 399.

(Dkt. No. 14-1 at 21–22.)

5

## III. DISCUSSION

### A. *Standard of Review Generally*

The ultimate issue to be determined by this Court is whether the ALJ's decision that JT was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Individuals under 18 years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). There is a three-step process that is used to determine whether a child is disabled under the Social Security Act. *See* 20 C.F.R. § 416.924.

The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924. The second step requires the ALJ to determine whether the child has any severe impairment, defined as anything that causes "more than minimal functional limitations." *Id.* Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id.* If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is considered disabled. 20 C.F.R. §§ 416.924(d)(1).

Alternatively, if the ALJ determines that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ then must assess functional

equivalence to a listing in terms of six domains:

    1. Acquiring and using information;

    2. Attending and completing tasks;

    3. Interacting and relating with others;

    4. Moving about and manipulating objects;

    5. Caring for yourself; and

    6. Health and physical well-being.

20 C.F.R. § 416.926(a),(b)(1). A child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation is when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation "interferes very seriously" with that ability. 20 C.F.R. § 414.926a(e)(3)(i).

    **B.    *Absence of Educational Records***

Based on what Torres has raised in her motion papers, the Court first will consider the completeness of the administrative record and the importance of any missing materials. "The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). Failure to develop a full record can lead to remand. *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999). In the specific instance of school records, the failure to make reasonable efforts to obtain updated school records is cause for remand. *Love v. Colvin*, No. 15-CV-00673-HBS, 2016 WL 4086948, at *4 (W.D.N.Y. Aug. 2, 2016); *see also Cespedes v. Barnhart*, No. 00-CV-7276-GEL, 2002 WL 1359728 at *4-5 (S.D.N.Y. June 21, 2002) (ALJ is required to make

7

reasonable efforts to obtain updated school records, especially when the plaintiff is appearing *pro se*, and failure to do so is cause for remand); *McClain v. Apfel*, No. 99 Civ. 3236 VM JCF, 2001 WL 66403 at *9-10 (S.D.N.Y. Jan. 26 2001) (ALJ failed to update records which led to him relying on information from when the child was four years old even though the opinion issued when the child was 8, which was cause for remand).

Here, while there is some evidence of good academic performance and limitations that fell below the "marked" level, a remand will be necessary to fill out the administrative record with educational records. Simply put, what little the Court knows about JT's academic, attendance, and disciplinary performance at school comes third-hand from the testimony or reports of people who may or may not have seen grade reports or other reports themselves. *Cf. Caldwell o/b/o J.W. v. Berryhill*, No. 1:15-CV-00613-MAT, 2018 WL 1081009, at *3 (W.D.N.Y. Feb. 28, 2018) (ordering remand where, *inter alia*, "the administrative record does not contain any of Claimant's school transcripts"); *Abrams v. Comm'r*, No. 13-CV-5568 (KAM), 2016 WL 614683, at *9 (E.D.N.Y. Feb. 16, 2016) (ordering remand where an ALJ relied heavily on a single, incomplete teacher questionnaire to assess functional domains). If JT's academic, attendance, or disciplinary reports somehow were unavailable then the situation might change. As it stands, the Court cannot discern the availability of JT's grades and other records because the Commissioner never requested them. The one request sent to the Buffalo Board of Education was a request for medical information and a medical field contact. [196.] Unless the Buffalo Board of Education states that it kept no records of JT's grades, attendance, and disciplinary issues, those records would be primary evidence and would help complete the administrative record.

In recommending remand to obtain educational records, the Court cautions Torres's counsel that any remand will be a narrow procedural one with no implications for ultimate outcomes. JT's

own guardian (Torres) and teacher appear to have taken the position that JT is an occasional honor-roll student who has overcome some behavioral problems with some assistance, including the assistance from her 504 plan.  Pushing to obtain the academic records could very well backfire if those records bolster the testimony from Torres and from JT's teacher and support the ALJ's determination.  The impact of educational records on Torres's application, however, does not need to be addressed at this time.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting Torres's motion (Dkt. No. 13) in part to vacate the Commissioner's final determination and to remand the matter for further development of the administrative record.  The Court recommends denying Torres's motion in all other respects but without prejudice.  The Court further recommends denying the Commissioner's cross-motion (Dkt. No. 14) in its entirety but also without prejudice.

## V.   OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  FRCP 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's

decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: May 15, 2018